IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB DANIEL WALSH, | ) |
| | ) |
| Plaintiff | ) Case No. 1:20-cv-00118 (Erie) |
| | ) |
| vs. | ) |
| | ) HON. RICHARD A. LANZILLO |
| JOHN WETZEL, DERRICK | ) UNITED STATES MAGISTRATE JUDGE |
| OBERLANDER, KEVIN COWAN, | ) |
| BRUCE SIMMONS, CHARLES | ) MEMORANDUM OPINION ON |
| CRISSMAN, ANGEL GRESSEL, | ) DEFENDANTS' MOTIONS TO DISMISS |
| RICHARD CAMACHO, JOHN/JANE | ) |
| DOES 1-17 | ) ECF NO. 56 |
| | ) ECF NO. 60 |
| Defendants | ) ECF NO. 66 |
| | ) |

Plaintiff Jacob Daniel Walsh ("Walsh") brings this lawsuit against employees of the Pennsylvania Department of Corrections and several psychological services providers at the State Correctional Institution at Forest ("SCI-Forest") based on a horrific incident he suffered at the hands of a cellmate. The Defendants have filed three separate motions to dismiss Walsh's Amended Complaint. *See* ECF Nos. 56, 60, and 66. For the reasons explained below, the motions will be granted in part and denied in part.[1]

I.   Factual Background

Accepting Walsh's allegations as true for purposes of the Defendants' motions, his pleading paints an appalling picture of prison violence. On October 8, 2019, Walsh was housed in the Restricted Housing Unit ("RHU") at SCI-Forest.[2] *See* ECF No. 55, ¶ 16. Approximately a month later, he was assigned a cellmate, Kurtis Urey ("Urey"). *Id.*, ¶ 17. Shortly after moving into the cell

---

[1] The Parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings pursuant with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1). *See* ECF Nos. 7, 24, 43. The Court has jurisdiction over this civil rights case pursuant to 28 U.S.C. §§ 1331, and 1343(a) and 42 U.S.C. § 1983.

[2] Walsh has since been transferred to SCI-Greene. *See* ECF No. 55, ¶ 1.

1

with Walsh, Urey sent a DC-ADM 135A inmate request slip to the prison psychology department in which he "explicitly detailed [his] homicidal/suicidal thoughts and urges that he was experiencing" and asked for help. *Id.*, ¶¶ 18-20. Urey shared his submission with Walsh prior to sending it. *Id.*, ¶ 21. The prison psychology department convened a "Psychological Review Team" ("PRT") comprised of Defendants Cowan, Simmons, Crissman, Gressel, and Camacho, and met with Urey in person. *Id.*, ¶ 22. The PRT "unanimously" ordered Urey returned to the cell he shared with Walsh. *Id.*, ¶ 24.

Upon returning to their cell, Urey attacked Walsh, sodomizing, and raping him. *Id.*, ¶ 28. Urey then beat Walsh unconscious and "hog-tied" him. *Id.*, ¶ 29. Then, Urey gathered all the flammable items in the cell into a pile and set a "massive fire with the intent to" kill Walsh. The prison's emergency response team was summoned. They put out the fire and dragged Walsh to safety. *Id.*, ¶¶ 30-32.

As a result of this incident, Walsh suffered severe physical and emotional trauma. *Id.*, ¶ 34. The manifestations of this trauma include "bed-wetting, night terrors, flashbacks, paranoia, and terror." *Id.*, ¶ 35. He continues to suffer from severe, crippling headaches, fainting, vomiting, neck, shoulder, and back pain, muscle spasms, breathing difficulties, blurred vision, and other physical symptoms. *Id.*, ¶ 42. Walsh pleads that he repeatedly sought mental health treatment for the trauma he suffered but any response by the Defendants was limited or to "no avail." *Id.* Walsh acknowledges that he is "being prescribed numerous psychotropic medications, pain-relievers, steroidal oral-inhalers, and physical therapy" but the Amended Complaint is unclear whether Walsh received this treatment while at SCI-Forest or upon his transfer to SCI-Greene. *See id.*, ¶ 44.[3]

---

[3] The next paragraph of the Second Amended Complaint alleges that SCI-Greene placed Walsh on "medical work-restriction, not to lift anything over 20 pounds." ECF No. 55, ¶ 45.

II.     Procedural History

Walsh filed a civil rights complaint pursuant to 42 U.S.C. § 1983 seeking redress for his injuries.[4] *See* ECF No. 6. Walsh then filed an Amended Complaint as of right. *See* ECF No. 26. With leave of Court, Walsh filed a Second Amended Complaint, which is the operative pleading in this case. *See* ECF Nos. 63 (Order permitting filing of Second Amended Complaint), 55 (Second Amended Complaint). Named as Defendants are John Wetzel, Secretary of the Pennsylvania Department of Corrections ("DOC"), Derrick Oberlander, the Superintendent at SCI-Forest, Bruce Simmons, the Chief Psychologist at SCI-Forest, Kevin Cowan, a Psychological Services Specialist, Charles Crissman, another Psychological Services Specialist at SCI-Forest, Richard Camacho, M.D., a physician and employee of Centurion, a mental health services provider at SCI-Forest, and Angel Gressel, a certified registered nurse practitioner who is also employed by Centurion at SCI-Forest. *Id.*, ¶¶ 3-9. Walsh has also named seventeen John Doe Defendants. *Id.*, ¶ 11.

The verified Second Amended Complaint includes six counts: (1) a failure to protect claim against Defendants Cowan, Simmons, Crissman, Gressel, and Camacho, *id.*, ¶ 58; (2) an Eighth Amendment deliberate indifference claim against Defendants Cowan, Simmons, Crissman, Gressel, Camacho, and Oberlander, *id.*, ¶ 59; (3) a First Amendment retaliation claim against Defendants Cowan, Simmons, Crissman, Gressel, and Camacho, *id.*, ¶ 60; (4) a claim against Defendants Cowan, Simmons, Crissman, Gressel, and Camacho based on their "sadistic and malicious intent to sanction torture in an American prison, *id.*, ¶ 61; (5) a state law intentional infliction of emotion distress claim against Defendants Cowan, Simmons, Crissman, Gressel, and Camacho, *id.*, ¶ 62; and finally, (6) a conspiracy claim against Defendants Cowan, Simmons, Crissman, Gressel, and

---

[4] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Camacho based on their alleged concerted actions to deprive Walsh of mental health treatment, *id.*, ¶ 63.[5]

All Defendants have filed motions to dismiss. At ECF No. 56, Defendants Wetzel and Oberlander jointly move to dismiss all claims against them based on their lack of personal involvement in any actionable conduct alleged in the Second Amended Complaint.[6] Defendants Camacho and Gressel move separately to dismiss the claims against them. *See* ECF No. 60. The remaining SCI-Forest employees—Cowan, Simmons, and Crissman—have moved to dismiss only Walsh's Fifth Amendment claims against them. *See* ECF No. 66. Walsh has filed a Response in Opposition to each motion (ECF No.64, 65, 71) as well as a Supplemental Response in Opposition (ECF No. 72). Defendants Camacho and Gressel filed a Reply Brief. ECF No. 69. The motions are now ready for disposition

III.     Standard of Decision

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief

---

[5] At Count Five, the state law intentional infliction of emotion distress claim, Walsh includes the phrase, "equal protection of law." ECF No. 55, ¶ 62. Despite his passing reference and invocation of "equal protection," the Court does not construe his Second Amended Complaint to raise such a claim. Among other things, "[w]hen stating an equal protection claim, a plaintiff must first show that he has been treated differently from similarly situated individuals." *Bailey v. Jurnak*, 2019 WL 2488035, at *6 (M.D. Pa. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 995796 (M.D. Pa. Feb. 28, 2019) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Here, Walsh does plead anything remotely showing that he has been treated differently from similarly situated individuals and thus the Court will not construe his claim as one raising an equal protection violation.

[6] Walsh does not identify Defendant Wetzel in the heading of any count. He does allege, however, that Wetzel "manages and administers all of [the DOC's] operations and executes all of its policies, rules, and regulations. Defendant [Wetzel] also employs subordinates to oversee individual facilities, including but not limited to: subcontract(s) acting under authority of the PADOC." ECF no. 55, ¶ 3. Nonetheless, the Court construes the Second Amended Complaint as brining supervisory liability claims against the Secretary. *See, e.g., Carter v. Murray*, 2021 WL 4192055, at *4, n.44 (E.D. Pa. Sept. 14, 2021) (construing complaint to allege claims against a defendant not named in connection with several claims); *Deemer v. City of Oil City*, 2021 WL 4391275, at *4 (W.D. Pa. Sept. 24, 2021) (construing claim as one alleging supervisory liability ).

4

above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *Miller v. Knight*, 2021 WL 4445014, at *1 (W.D. Pa. Sept. 28, 2021).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Court of Appeals for the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

5

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Walsh is representing himself, the allegations in the Second Amended Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag*, 454 U.S. at 354; *United States ex rel. Montgomery v. Bierley*, 141 F.2d at 555.

With these standards in mind, the Court now turns to its analysis and discussion of each motion.

III. Defendants Cowan, Simmons, and Crissman's Motion to Dismiss (ECF No. 66) Walsh's Fifth Amendment claims against them will be granted as unopposed.

The Court turns first to the motion to dismiss filed by Defendants Cowan, Simmons, and Crissman. *See* ECF No. 66. Therein, they move to dismiss only Walsh's Fifth Amendment claims against them. *Id.*, p. 3. In his response, Walsh acknowledges that he is "not opposed to the dismissal of his Fifth Amendment claims only." ECF No. 71, p. 2. Therefore, the Fifth Amendment claims against Defendants Cowan, Simmons, and Crissman will be dismissed.

This case will proceed to the next stage of litigation on the remaining claims alleged against these Defendants.

IV. Defendants Wetzel and Oberlander's Motion to Dismiss (ECF No. 55) will be granted.

Defendant Wetzel is the former Secretary of the Department of Corrections and Defendant Oberlander is the Superintendent of SCI-Forest. ECF No. 55, ¶¶ 3-4. These Defendants argue that

Walsh's claims against them should be dismissed because they were not personally involved in the constitutional violations alleged in the Second Amended Complaint. *See* ECF No. 57, p. 3.

A defendant in a § 1983 action "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)) (citations removed). It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient. *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015).

The Second Amended Complaint does not allege that either of these Defendants were personally involved in the incidents under review. Williams acknowledges as much, arguing instead that these two Defendants were liable "due to their supervisory positions, in charge of the remaining defendants." ECF No. 64, p. 3. The mere fact that Wetzel and Oberlander were "supervisors" or had supervisory authority over the other Defendants cannot support liability under § 1983. *Hepler v. Wetzel*, 2019 WL 1923004, at *5 (W.D. Pa. Apr. 30, 2019) (citing *Capone v. Marinelli*, 868 F.2d 102, 106 n.7 (3d Cir. 1989)). This is because "[l]iability may not be imposed under § 1983 on the traditional standards of *respondeat superior*." *Id.* Thus, Wetzel and Oberlander cannot be held liable under a *respondeat superior* theory. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

But "two theories of supervisory liability" are available under § 1983 upon a proper factual showing. *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). First, "supervisors can be

7

liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Under the second theory, a supervisor may be held liable when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* (quoting *A.M.*, 372 F.3d at 586).

Walsh has not alleged facts sufficient to show that Wetzel or Oberlander "established a policy, practice or custom" that caused the constitutional harm.[7] Nor has Walsh alleged facts to support a plausible inference that these supervisory defendants had "knowledge of and acquiesced in" the constitutional violations of their subordinates. Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000). Walsh does not plead that either Defendants Wetzel or Oberlander had contemporaneous knowledge of the alleged assault but instead he purports to ground his claims of supervisory liability on an alleged pattern of similar incidents.

The Second Amended Complaint alleges, for example, that "the PADOC, more specifically, SCI-Forest, has a prior history of the mishandling of mentally-ill inmates." ECF No. 55, ¶ 52. To bolster this allegation, Walsh attached a copy of an article from the *Erie Times-News* reporting on a

---

[7] The Second Amended Complaint does allege that Defendants Cowan, Simmons, Crissman, Gressel, and Camacho violated a policy which requires "any inmate who expresses thoughts of self-harm or harm to others shall be immediately isolated and placed in a psychiatric observation cell (P.O.C.) for no less than 24 hours" when they returned Urey to the cell he shared with Walsh. ECF No. 55, ¶¶ 26-27. Walsh does not allege, however, that Defendants Wetzel or Oberlander adopted a policy or custom that approved their subordinates' alleged violation of this policy. *See, e.g., Davis v. Wetzel*, 2021 WL 4892098, at *9 (M.D. Pa. Sept. 18, 2021). Instead, he pleads only that certain Defendants violated the policy, which caused the harm he suffered. Put another way, Walsh alleges no facts to support an inference that Wetzel or Oberlander adopted "a policy or custom that was the moving force behind any constitutional violation." *Colon v. Anglikowksi*, 2021 WL 2875477, at *8 (W.D. Pa. July 8, 2021). Absent such allegations, the Second Amended Complaint fails to state a supervisory liability claim based on a policy, practice, custom against these Defendants. *See, e.g., Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018).

lawsuit brought by the daughter of an inmate at SCI-Forest in 2014. In that case the DOC—and SCI-Forest in particular—were charged with the "mishandling of mentally ill mates."[8] *See* ECF 55-5, p. 2. There, it was alleged that despite observing a mentally ill defendant engaging in "acute psychotic behavior," SCI-Forest officials ignored their own policy and jointly housed that inmate with a non-mentally ill inmate, resulting in the mentally ill inmate grotesquely assaulting and murdering the plaintiff's father. *Id.* Secretary Wetzel was named as a Defendant in that action. *Id.* The article additionally reports that the case was filed against the backdrop of another lawsuit filed against the DOC by the Disability Rights Network of Pennsylvania, which alleged numerous deficiencies in the care and management of mentally ill inmates in the Commonwealth's correctional institutions. Wetzel was also a defendant in that action. *See Disability Rights Network of Pennsylvania v. Wetzell*, No. 1:13-cv-00635 (M.D. Pa. 2013). From this, Walsh argues that Wetzel and Oberlander had knowledge of the risk inmates faced due to the improper actions of the SCI-Forest Psychology Department and that their failure "to correct, reprimand, train, and supervise the offending subordinates" as a result of these lawsuits establishes their personal involvement. *See* ECF No. 64, p. 4.

For certain, courts have held that knowledge of prior lawsuits may apprise defendants of the existence of constitutionally deficient conditions or policies, "particularly when accompanied by sufficient details of the lawsuit and their relation to the current allegations." *Constant v. Prack*, 2019 WL 3287818, at *8 (S.D.N.Y. July 19, 2019) (collecting cases); *see also Hendrix v. Annucci*, 2021 WL

---

[8] The Court may consider not only the allegations in Walsh' Second Amended Complaint but any "exhibits attached to [it] and matters of public record," such as the docket in other federal court cases. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Malarik v. Beaver Cty. Jail Admin.*, 2021 WL 3609943, at *1 (W.D. Pa. July 20, 2021), *report and recommendation adopted*, 2021 WL 3603597 (W.D. Pa. Aug. 13, 2021) (court may take judicial notice of court records and dockets of the federal courts). Indeed, particularly "in cases where a pro se plaintiff is faced with a motion to dismiss," as here, "it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in [it]." *Rodriguez v. Maharaj*, 2021 WL 508611, at *1 (D.N.J. Feb. 11, 2021) (quoting *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (citations omitted).

4405977, at *13 (N.D.N.Y. Sept. 27, 2021). But Walsh's attempt to use these two prior lawsuits to show that Wetzel and Oberlander had knowledge of similar incidents fails. First, he does not provide, beyond the article and a passing reference to another case, sufficient details of these actions, the claims presented, and their relation to his own allegations. Second, the lawsuits Walsh cites are too few in number and too far removed in time to establish the personal involvement of these Defendants in any policy or custom that could be considered the moving force behind inmate Urey's assault. Indeed, even the existence of a fairly significant number of lawsuits has been found to be insufficient to plausibly show personal involvement. *See, e.g., Calderon v. City of New York*, 138 F. Supp.3d 593, 612-13 (S.D.N.Y. 2015) (finding that generic allegations of sixteen prior lawsuits were insufficient to establish a widespread custom or practice, or to plausibly suggest a failure to train or supervise where plaintiff failed to include any allegations about the municipality's response to those cited lawsuits); *Tieman v. City of Newburgh*, 2015 WL 1379652, at *16-17 (S.D.N.Y. Mar. 26, 2015) (finding that plaintiff's citation to nine prior lawsuits was insufficient to establish a custom or policy); *Guillory v. Cuomo*, 2014 WL 11173632, at *4 (N.D.N.Y. Dec. 2, 2014) (dismissing claims where plaintiffs cited to four prior lawsuits but failed to allege how the defendants had involvement or knowledge of the incident included in those lawsuits). Indeed, Walsh points to only two prior lawsuits, each of which were filed in 2013. Any connection between those lawsuits and the incident in this case is too remote to impute personal knowledge of a pattern of subordinate misconduct or inadequate training of subordinates to Wetzel or Oberlander. The claims against them will therefore be dismissed based on their lack of personal involvement in actionable conduct.

V. The Motion to Dismiss by Defendants Camacho and Gressel will be granted in part and denied in part.

Defendants Camacho and Gressel ("Psychology Defendants") have also moved to dismiss the claims against them. *See* ECF No. 60. Walsh brings the following claims against these Defendants: an Eighth Amendment failure to protect claim, an Eighth Amendment deliberate

10

indifference claim based on their failure to provide Walsh with adequate mental health treatment, a retaliation claim under the First Amendment, a conspiracy claim, and a state law intentional infliction of emotion distress claim. *See* ECF No. 55, ¶¶ 58-63. The Psychology Defendants argue that Walsh has failed to state a failure to protect claim against them and that he has not exhausted the other claims. *See* ECF No. 61, p. 5. The Court turns to the exhaustion argument first.

> A.   Walsh has exhausted his Eighth Amendment failure to protect claim, but has not exhausted his Eight Amendment deliberate indifference, First Amendment retaliation, conspiracy, and state law intentional infliction claims against the Psychology Defendants.

The Psychology Defendants contend that Walsh failed to exhaust his Eighth Amendment deliberate indifference, retaliation, and state law intentional infliction of emotion distress claims. *Id.*, at pp. 5-6. They ask the Court to convert their motion to dismiss into to a motion for summary judgment. The Court need not do so here. Where a defendant moves to dismiss based on a failure-to-exhaust defense and "the exhaustion issue turns on [ ] indisputably authentic documents related to [the inmate's] grievances," the Court may consider those documents "without converting [a motion to dismiss] to a motion for summary judgment." *Rinaldi v. United States*, 904 F.3d 257, 261, n1 (3d Cir. 2018) (quoting *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004)). *See also Sledge v. Erie County Prison*, 2021 WL 2073798, at *6 (W.D. Pa. May 24, 2021).

Under the DOC's grievance policy, an inmate is required to file a grievance within 15 days of the underlying incident, and then appeal the decision to final review with the Secretary's Office of Inmate Grievance ("SOIGA"). *Id.* at p. 4. The Psychology Defendants refer the Court to grievance records they obtained through a subpoena issued to the SOIGA office. *See* ECF No. 61-2. These records show that Walsh submitted only one grievance, No. 837913, to final review.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that a prisoner exhaust available administrative remedies before filing an action challenging prison conditions or experiences. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under

11

section 1983 of this title, or any other Federal law, by a prisoner, confined in any jail, prison or correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Court of Appeals for the Third Circuit has explained:

> The PLRA requires inmates to exhaust prison grievance procedures before suing in court. 42 U.S.C. § 1997e(a). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself."

*Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016) (citations omitted).

DC-ADM 804 provides a three-step process, and an inmate must follow each of the steps in order to exhaust his administrative remedies under the PLRA. *See Jackson v. Carter*, 813 Fed. Appx. 820, 823 (3d Cir. 2020) ("The DOC has a grievance policy involving a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA."). The three steps are: (1) initial review by a grievance officer of an inmate grievance; (2) appeal to the facility manager; and (3) final appeal to SOIGA. *Pressley v. Huber*, 2017 WL 1062375, at *2 (M.D. Pa. Mar. 21, 2017). "The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant." *Rinaldi*, 904 F.3d at 268 (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)); *see also Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff.").

Walsh's pleading states that he "has properly, fully, and diligently pursued and followed the PADOC Rules/Regulations in his efforts to exhaust." ECF No. 55, ¶ 15. Further, he address this issue in his Response. ECF No. 64. There, he asserts to have exhausted his claims through the applicable grievance process, pointing specifically to his filing of Grievance 837913 on November 24, 2019. *See* ECF No 65, p. 3. Walsh grieved the following:

> On Tuesday, 11-19-19, I was assaulted by my cell mate Kurtis Urey. He knocked me unconscious, tied and bound my hands and legs together behind my back, and tried to burn me alive by setting our entire cell on fire. I was taken to the outside hospital to have my lungs examined due to the massive smoke and fire extinguisher fluid inhalation. Prior to this event, I/M Urey had sent a DC135A 'Inmate Request to Staff' to the phycology department informing them he was having thoughts and urges of killing other people, eating their bodies, and committing suicide. On 11/19/19 just a few hours prior to my assault, the psychology panel spoke with I/M Urey concerning these thoughts and were fully aware he was having these feelings. I do not know the details of what was said at this meeting but I/M Urey was placed back in my cell directly after said meeting. Approximately 6 hours later, he assaulted me.

ECF No. 61-3, p. 7. Walsh then quotes DOC policy 13.8.1, Section 2, ¶ K, which requires a suicidal inmate to be placed in a psychiatric observation cell. *Id.* Walsh continues:

> The psyche (sic) depart. directly and deliberately violated this policy and department directives by allowing I/M Urey to return to my cell and failing to place him [in] P.O.C. after they were made fully aware that he was having homicidal/suicidal thoughts. They put my life in danger and the DOC is directly responsible for the attack on my life.

*Id.* Exhaustion is considered separately for each claim brought by an inmate. *See Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 219–20 (2007)).

The Court has little difficulty concluding from his grievance that Walsh exhausted his failure to protect claim. Walsh specifically asserted that, by returning Urey to their shared cell after receiving notice that Urey was experiencing homicidal/suicidal thoughts, his life was placed in danger. ECF No. 61-3, p. 7. This submission satisfies the "primary purpose of a grievance [which] is to alert prison officials to a problem." *See Travillion v. Wetzel*, 765 Fed. Appx. 785, 789 (3d Cir. Apr. 8, 2019) (quoting *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007).[9]

---

[9] Any argument by the Psychology Defendants that this grievance failed to properly identify them would be meritless. It is not the purpose of the grievance process "to provide personal notice to a particular official that he [or she] may be sued." *Jones*, 549 U.S. at 219. Walsh's grievance specific identification of the "psyche (sic) department" and the "DOC" together with the inclusion of specific dates, locations, and relevant facts was sufficient to identify Defendants Camacho and Gressel. *See Travillion*, 765 Fed. Appx. at 789 (citing *Johnson v. Johnson*, 385 F.3d 503, 523 (5th Cir. 2004) (noting "a grievance can sufficiently identify a person even if it does not provide an actual name; functional descriptions and the like—e.g., a reference to 'the guards in the shower room' on a certain date—would suffice)). *See also Diaz v. Palakovich*,

13

This is not the case, however, for Wash's Eighth Amendment deliberate indifference, conspiracy, state law intentional infliction, and First Amendment retaliation claims. Walsh pleads that the Psychology Defendants were deliberately indifferent by failing to provide him with mental health treatment after he was attacked. ECF No. 55, ¶¶ 59, 61, 63. He also claims that these Defendants acted intentionally by ignoring his "severe psychological damage." *Id.*, ¶ 62. Finally, he claims the Psychology Defendants retaliated against him for filing a grievance about his attack. *Id.*, ¶ 60. But Grievance 837913 does not mention or otherwise imply a denial of mental health treatment or a conspiracy to do so. *See* ECF No. 61-3, *generally*. Nor does Walsh grieve that he was being or had been subjected to the intentional infliction of emotional distress. *Id.* These claims, which arose after the incident related in Grievance 837913, must have been grieved separately because they are discrete claims, distinct from the failure to protect claim referenced in that grievance.

Retaliation is also a separate claim and therefore must also be separately grieved. *See White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990). *See also Jackson v. Shouppe*, 2020 WL 3574645, at *7 (W.D. Pa. June 30, 2020). And although in rare cases prisoners will not be required to file a grievance for a retaliation claim if they fear further retaliation, *see Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018), Walsh does not specifically allege that he feared further retaliation. Thus, the extreme facts of *Rinaldi*—overt threats of violent retribution—are not present here. These claims have not been properly exhausted and will be dismissed.

> B. Walsh has stated an Eighth Amendment failure to protect claim against the Psychology Defendants.

Having concluded that Wash properly exhausted his Eighth Amendment failure to protect claim, the Court must now consider whether Walsh has alleged facts sufficient to state such a claim.

---

448 Fed. Appx. 211, 217 (3d Cir. Oct. 4, 2011)) (determining that inmate's identification of "mailroom staff," along with grievance officer's subsequent interview of mailroom employees, obviated any procedural default that may have resulted from failure to specifically name mailroom employees).

Walsh alleges that the Psychology Defendants failed to protect him from Urey's assault. ECF No. 55, ¶¶ 58-59. As this Court has explained:

> The Eighth Amendment of the United States Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). This includes the general duty to "protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To state a viable failure-to-protect claim, the plaintiff must establish that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

*Williams v. Pennsylvania Department of Corrections*, 2020 WL 5237606, at *6 (W.D. Pa. Aug. 14, 2020), *report and recommendation adopted*, 2020 WL 5231417 (W.D. Pa. Sept. 2, 2020). Although the standard required to state such a claim is rigorous, *see Brewer v. Smith*, 2021 WL 3123893, at *2 (W.D. Pa. July 22, 2021), Walsh has met it here.

First, Walsh pleads he was incarcerated under conditions that posed a substantial risk of serious harm. He alleges that he saw inmate Urey's correspondence to SCI-Forest's Psychology Department in which Urey related his "homicidal/suicidal thoughts and urged." ECF No. 55, ¶ 20. Walsh supports this allegation by attaching inmate Urey's DC-135A form, dated November 17, 2019, in which he states: "lately I've been having thoughts and dreams of killing other people, eating their dead bodies, then killing myself." ECF No. 55-1, p. 2. Urey also reported, "I can't even have a decent conversation with anyone without thinking of how many different ways to kill them." *Id.*

Second, Walsh has sufficiently pleaded that the Psychology Defendants were deliberately indifferent to the risk inmate Urey posed. To satisfy this second pleading requirement, "an inmate must show that the prison official knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 229 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 847). *See also Beers-Capitol v.*

*Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). The inmate "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that defendants must have known about the risk." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) (quoting *Farmer*, 511 U.S. at 842-42) (internal quotation marks omitted).

Here, Walsh has adequately alleged facts to support that the risk to his safety posed by inmate Urey was well-documented. This support includes Urey's DC-135A form, which Walsh attached as a supplement to the Second Amended Complaint, and which communicated and recorded notice to the institution's Psychology Department of Urey's homicidal ideations. Further, Walsh pleads that "confirmation of the receipt of inmate Urey's 'request slip' is verified by the psychology department's initiation of a specific psychological review team (PRT) an 'in-person' review with inmate Urey on November 19, 2019." ECF No. 55, ¶ 22. Given Walsh's allegation that Camacho and Gressel were members of the PRT, he has adequately alleged they "must have known about the risk" Urey posed to Walsh. *Betts*, 621 F.3d at 259. Therefore, Walsh has pleaded facts to support an inference that they acted with deliberate indifference to his safety.

Finally, Walsh has alleged facts sufficient to support an inference that the actions and inaction of the Psychology Defendants caused him harm. Upon returning Urey to the cell he shared with Walsh, Urey attacked and "forcibly raped and sodomiz[ed]" Walsh, beating him unconscious and restraining him while Urey set their cell on fire. ECF No. 55, ¶¶ 27-29.

Therefore, Walsh has not only exhausted his failure to protect claim against the Psychology Defendants, but also sufficiently stated such a claim against them. This claim, therefore, will proceed to the next stage of litigation.

VI. Conclusion

Walsh's claims against Defendants Wetzel and Oberlander will be dismissed due to their lack of personal involvement. This dismissal is without prejudice, however, and Walsh will be given an opportunity to file a further amended complaint if he has additional facts to allege to support the personal involvement of these individuals. *See, e.g., Corbin v. Halligan*, 2021 WL 71232, at *2 (W.D. Pa. Jan. 8, 2021), *appeal dismissed*, 2021 WL 3403117 (3d Cir. May 4, 2021).

Walsh's Fifth Amendment claims against Defendants Cowan, Simmons, and Crissman will be dismissed with prejudice.

Finally, the Eighth Amendment deliberate indifference claims alleged against the Psychology Defendants relating to a deprivation of mental health treatment, the First Amendment retaliation claim against the Psychology Defendants, conspiracy, and the state law intentional infliction of emotion distress claim will be dismissed with prejudice based on Walsh's failure to exhaust his administrative remedies as to these claims. The Psychology Defendants' motion to dismiss the Eighth Amendment failure to protect claim will be denied.

Given that they have not moved for dismissal, Walsh's failure to protect, deliberate indifference, retaliation, conspiracy, and state law intentional infliction claims against Defendants Cowan, Simmons, and Crissman will proceed, and a case management conference will be scheduled in due course.

A separate order follows.

Entered this 27th day of October, 2021.

_____
HON. RICHARD A. LANZILLO
United States Magistrate Judge